IN THE MATTER OF JOHN W. DAILEY, AN
ATTORNEY-AT-LAW.

June 10, 1981.

*John J. Lindsay* argued the cause for the District IV Ethics Committee.

Respondent waived oral argument before the Board, although that waiver was not received by the Board prior to its meeting.

## ORDER

This matter coming before the Court on an order to show cause why JOHN W. DAILEY of Gloucester City should not be disbarred or otherwise disciplined for his violation of DR 6–101(A)(2), DR 7–101(A), and DR 1–102(4), and said JOHN W. DAILEY having failed to appear before this Court on the return date of said order to show cause, and good cause appearing;

It is ORDERED that the report of the Disciplinary Review Board recommending that respondent be disbarred is hereby adopted; and it is

ORDERED that JOHN W. DAILEY be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that JOHN W. DAILEY be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that JOHN W. DAILEY reimburse the Administrative Office of the Courts for the cost of all stenographic transcripts in this matter.

### Decision and Recommendation of the Disciplinary Review Board

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey:

This matter is before the Board based upon three presentments filed by the District IV Ethics Committee. These presentments concern a pattern of negligence on the part of respondent in his handling of legal matters on behalf of his clients evidenced by his failure to carry out numerous contracts of employment. In addition, the Board reviewed the circumstances surrounding the respondent's recent suspension from the practice of law and information obtained thereafter.

### 1. DRB 80–83

The presentment of the Committee in Docket No. DRB 80–83 concerns thirteen complaints against respondent, eight of which were contained in a consolidated Committee complaint. The remaining complaints were filed by individual clients of respondent shortly thereafter. The misconduct which forms the basis for the presentment may be summarized as follows:

### a. WOOLBERT COMPLAINT

Complainant Robin Woolbert retained respondent in February 1974 to institute divorce proceedings. By April 1974 she had paid respondent $520 towards his fee. Woolbert filed her com-

plaint with the District Ethics Committee on May 16, 1978 at which time respondent had not filed a complaint for divorce and had not communicated with Woolbert since their initial conversation. Despite repeated demands from the Committee, respondent did not file an answer to the ethics complaint until October 1978. In his answer and during his testimony before the Committee on July 3, 1979 respondent acknowledged his failure to properly handle the Woolbert divorce, which was eventually dismissed for lack of prosecution. Respondent returned the full fee he had received from Woolbert, who obtained her divorce through another lawyer.

### b. HICKMAN COMPLAINT

In November 1977 respondent represented Deanna Hickman, a defendant in a divorce proceeding. One of the terms of the divorce settlement concerned the setting up of a trust fund for Hickman's daughter.

On August 1, 1978 Hickman contacted the District Ethics Committee as neither she nor her ex-husband's attorney were ever successful in communicating with respondent and the trust had not yet been established. In September 1978 the matter was resolved by the parties without the assistance of respondent. At a formal hearing before the Committee on July 3, 1979 respondent admitted failing to set up the trust following the Hickman divorce.

### c. SMITH COMPLAINT

Ralph Smith retained respondent in or about 1976 to institute a number of suits on behalf of Smith's corporation. When it became apparent that respondent would take no action, Smith retained another lawyer.

On August 7, 1978 Smith filed a complaint with the Committee concerning respondent's failure to turn over files to his new attorney. Despite efforts by the Committee, respondent did not turn over the files until October 1978, following the direct

intervention of a member of the Committee. At a formal hearing before the Committee on July 3, 1979 respondent admitted failing to act on any of the matters he was retained by Smith to handle. He offered no explanation for his procrastination in delivering the files to Smith's attorney.

### d. KOSINSKI COMPLAINT

Kenneth Kosinski retained respondent in 1976 to handle a personal injury suit. On May 11, 1978 Kosinski contacted the District Ethics Committee and indicated that he had not had any communication from respondent since first speaking with him in 1976. Repeated attempts by Kosinski to contact respondent following the referral of the matter to the Ethics Committee were to no avail. At a formal hearing before the Committee on July 3, 1979 respondent admitted that he failed to institute suit on behalf of his client. The client obtained another attorney who filed suit prior to the running of the statute of limitations.

### e. GROSS COMPLAINT

In 1974 Patricia Gross retained respondent to institute divorce proceedings on her behalf. A fee of $650 was paid. On August 2, 1978 Gross filed a complaint with the District Ethics Committee alleging that respondent had not yet filed the complaint and had failed to communicate despite numerous attempts by Gross to contact him.

Through the efforts of a member of the Ethics Committee, a complaint was finally filed by respondent in late January 1979, even though respondent had first advised the Committee that the complaint would be filed in October 1978.

Following the filing of the divorce complaint, respondent failed to seek a default judgment when the complaint went unanswered. Further, although respondent agreed to refund the retainer paid by Patricia Gross, the check he sent her was returned due to insufficient funds. The dilatory conduct of respondent was admitted by him at a formal hearing before the Committee on July 3, 1979.

### f. OLIVE COMPLAINT

In March 1977 Gary Olive retained respondent to institute divorce proceedings on his behalf. A fee of $650 was paid. On June 23, 1978 Olive filed a complaint with the District Ethics Committee based upon respondent's failure to take any action on his behalf.

Following the intervention of a member of the Committee, respondent returned Olive's file and the full amount of the fee paid. Olive retained another attorney to handle the divorce.

At a formal hearing before the District Ethics Committee on July 3, 1979 respondent admitted his failure to file a complaint on behalf of his client.

### g. DEUTER COMPLAINT

In 1974 an automobile negligence suit was filed in New Jersey on behalf of Mary Deuter by a Pennsylvania lawyer, who then referred the case to respondent. Four years later, in November 1978, Mary Deuter contacted the New Jersey Superior Court and was advised that her complaint had been dismissed in June 1978 because service had not been made on all defendants. She next attempted to reach respondent and was unsuccessful. Shortly thereafter she filed a complaint with the District Ethics Committee.

Through the intervention of the Committee respondent returned the file to Mary Deuter who engaged another attorney who was successful in having the matter reinstated to the trial calendar.

At a formal hearing before the District Ethics Committee on July 3, 1979 respondent admitted that he failed to take any action to protect the interests of Mary Deuter.

### h. LEWIS COMPLAINT

Mrs. Robert Lewis retained respondent in May 1978 to institute adoption proceedings. Some months later, when it became

obvious respondent would take no action, Mrs. Lewis orally contacted the District Ethics Committee. Upon the advice of the Committee, Mrs. Lewis, in early 1979 obtained the services of another lawyer.

At a formal hearing before the District Ethics Committee on July 3, 1979 respondent admitted that he took no action on behalf of Mrs. Lewis.

### i. MANGINE COMPLAINT

William J. Mangine retained respondent in 1976 for the purpose of instituting divorce proceedings. A $675 fee was paid respondent. Over the course of the next three years respondent repeatedly assured his client that the matter was awaiting a trial date. Mangine filed a complaint with the District Ethics Committee in February 1979.

At a hearing held before the District Ethics Committee on September 25, 1979 respondent admitted that he never filed a complaint for divorce on behalf of Mangine, acknowledging his misrepresentation about same.

### j. SMITH COMPLAINT

In September 1976 Margaret Smith consulted respondent concerning the possibility of her and her husband, James obtaining a no-fault divorce. Respondent agreed to file a complaint on her behalf and accepted a retainer of $325. Ultimately a total of $500 was paid respondent.

Despite assurances by respondent to Mrs. Smith that a divorce could be obtained in a matter of months, by March 1979 the Smiths had not been divorced and were unable to gain information about the status of their case from respondent who refused to communicate with them. An ethics complaint was then filed by James Smith.

In his answer to the complaint and in testimony at a formal hearing before the District Ethics Committee on July 3, 1979, respondent admitted that he never filed a complaint for divorce for Margaret Smith.

### k. ADAMS COMPLAINT

Claire Adams consulted respondent in January 1977 concerning her matrimonial problems. Her next contact with respondent was in May 1978 when respondent informed her that her husband had filed a complaint for divorce based upon eighteen months separation of the parties. An answer was filed by respondent on Mrs. Adams' behalf. In early 1979 Mr. Adams was granted a divorce. Claire Adams was never notified by respondent of the date of the final hearing. Further, she never received a copy of the judgment of divorce until the day she testified before the District Ethics Committee, September 25, 1979.

Testimony before the Committee did reveal that respondent had discussions with the attorney for Mr. Adams concerning equitable distribution in the form of a consent order. Respondent never discussed the consent order with Claire Adams. Further, respondent advised his adversary that he would not object to an order requiring his client to turn over her interest in the marital home to her husband, despite the fact that his client never approved this concession.

### 1. TOWNSON COMPLAINT

George Townson retained respondent in 1977 to institute divorce proceedings. A partial fee of $250 was paid respondent. Throughout the year 1978 Townson frequently contacted respondent to ascertain the status of his case. He was told that the matter was pending in Burlington County. Respondent finally advised Townson that a trial date of February 8, 1979 was set. On February 7th respondent told his client that the judge scheduled to hear the case was ill and the matter was, therefore, postponed. Over the next two months respondent repeatedly advised Townson that a new trial date had not been set. Townson suggested that respondent refer the case to a Burlington County attorney. Respondent, in May, advised Townson that he had been in contact with Kenneth Smith, Esq. Townson, suspi-

cious of the numerous excuses offered by respondent, telephoned Smith who stated that he had never had any contact with respondent. Smith thereafter contacted the Burlington County Clerk's Office and was advised that there was no record of a complaint for divorce ever having been filed on behalf of Townson.

At the formal hearing held before the District Ethics Committee on September 25, 1979 respondent admitted that he failed to file the complaint for Townson. He offered no explanation or excuse for his conduct.

### m. PEAKE COMPLAINT

In February 1975 respondent was retained to represent the estate of Edward Duggan. The estate was valued at approximately $20,000. In June 1979 one of the beneficiaries of the estate, Theresa Peake, complained to the District Ethics Committee concerning respondent's failure to settle the estate. On the date of the formal Committee hearing on this matter, September 25, 1979, respondent admitted that the estate was still not finally settled.

During the almost four years he handled the estate, respondent failed to file an accounting, failed to communicate with the beneficiaries, and failed to file an Inheritance Tax Return.

### 2. DRB 81–10

The second presentment, Docket No. DRB 81–10, concerns matters involving the unethical conduct of the respondent. The misconduct which forms the basis for this presentment may be summarized as follows:

### a. KILPATRICK COMPLAINT

In December of 1974, Frances Kilpatrick fell and was injured in a furniture store. She retained the respondent to represent her within a week of that accident. Although the respondent advised Ms. Kilpatrick on several occasions over the next three

to four years that he had filed suit and was awaiting a court date, no action was ever filed by him on Mrs. Kilpatrick's behalf, and the Statute of Limitations ran.

### b. MAY/BLACKBURN MATTER

James and Greta Blackburn retained the respondent to represent them in an action to recover for personal injuries sustained in a 1975 automobile accident. Following the death of her father in October of 1978, Julia May, the Blackburn's daughter, pressed the respondent for resolution of the matter. The respondent continually advised her that the matter was pending and he was negotiating a settlement. In late 1979, Mrs. May retained new counsel and discovered that, although a complaint was filed, the matter was later dismissed for respondent's failure to answer interrogatories. The respondent admitted at the hearing on this matter before the District IV Ethics Committee that he neither attempted to reinstate the case nor advise his clients of its true status. Although he noted that substituted counsel was able to reinstate the matter, he further admitted that he misrepresented the status of the case to Mrs. May.

### 3. DRB 81–11

The third presentment docketed as DRB 81–11, concerns the improper conduct of the respondent in three additional matters. The misconduct which forms the basis for this presentment may be summarized as follows:

### a. PETERS COMPLAINT

Alexander and Agnes Peters retained the respondent in 1975 to represent them in a Worker's Compensation matter which involved an asbestos-related illness. A claim was never filed by the respondent on his clients' behalf despite numerous representations to the contrary.

### b. PIERSON MATTER

In May of 1979, the respondent was retained by Susan and Richard E. Pierson to incorporate a business. Although incorporation papers were signed, they were never forwarded to the Secretary of State. In addition, the respondent has failed to respond to numerous attempts by his clients to meet with him or talk with him by telephone.

### c. DAISEY MATTER

Samuel E. Daisey retained the respondent in 1974 to represent him in a divorce proceeding. Payment to the respondent in the amount of $650 to cover costs and attorney's fees was made at that time. Mr Daisey attempted to contact the respondent many times, but was generally unsuccessful. On one or two occasions, when he did reach the respondent, Mr. Daisey was advised that the matter was pending in court, awaiting a trial date. In the more than six years following the commencement of the attorney-client relationship in this matter, the respondent failed to take any action on the matter, and, contrary to respondent's representations, never filed a complaint.

The District IV Ethics Committee for Camden and Gloucester Counties concluded that the respondent's actions constituted a pattern of negligence in his handling of legal matters generally in violation of *DR* 6–101(A)(2); that he failed to seek the lawful objectives of his clients through reasonably available means, failed to carry out contracts of employment entered into with clients, and prejudiced his clients' cases and damaged his clients during the course of the professional relationship, all in violation of *DR* 7–101(A), in addition to misrepresenting the status of cases to clients in violation of *DR* 1–102(A)(4).

Following receipt of the third presentment in this matter, the Division of Ethics and Professional Services was advised that the respondent was practicing law while under an Order of the Supreme Court declaring him to be ineligible to practice law for failure to pay the annual fee to the Clients' Security Fund of the

Bar of New Jersey in 1979 and 1980. For that improper activity, he was temporarily suspended from the practice of law on January 27, 1981. On February 3, 1981, the Court ordered that the temporary suspension be continued, and that the Division of Ethics and Professional Services gain possession and control of the respondent's legal files and records, and that his bank accounts be frozen. Analysis of the files and records obtained indicate that the respondent has not maintained business and trust accounts since February 27, 1980 and December 3, 1979, respectively.

During the period of time when respondent was ineligible to practice law, he accepted numerous unearned retainers from clients, most of which he failed to return.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the Committee, in finding unethical conduct on the part of the respondent, are fully supported by clear and convincing evidence. It is uncontroverted that the respondent has flagrantly violated numerous disciplinary rules on various occasions. The resulting financial and emotional hardships inflicted on many of his clients cannot be overlooked. In addition, the respondent's failure to observe the Supreme Court's Order of Ineligibility and his failure to observe rules governing the keeping of attorney records, when coupled with the Committee findings, evidences a complete disregard for the duties and responsibilities of an attorney-at-law of this State. The type of conduct demonstrated by respondent cannot be permitted, and requires decisive action in order that the public be protected from further serious transgressions.

The Board therefore recommends that the respondent be disbarred. The Board further recommends that the respondent be required to reimburse the Administrative Office of the Courts for appropriate administrative costs, including production of transcripts.

DISCIPLINARY REVIEW BOARD

DATED:  March 31, 1981
By:  A. Arthur Davis, 3rd
     A. Arthur Davis, 3rd
     Chairman